[110]               VAN PELT *vs.* McGRAW et al.

An action on the case will lie by the holder of a mortgage on lands, against the mortgagor or a purchaser from the mortgagor of the equity of redemption, for acts of waste committed with a knowledge that the value of the security will be injured thereby.

Accordingly, where the mortgaged premises were a scanty security for the debt, and the defendant, who had purchased under the mortgagor, took away the fences, and cut down and carried away valuable timber, with a knowledge of the existence of the mortgage and of the insolvency of the mortgagor, *held*, that an action on the case would lie against him in favor of the holder of the mortgage, for the injury done to the security.

And *held further*, that in order to sustain the action it was not necessary to show that the primary motive of the defendant in committing the wrongful acts was to injure the plaintiff's security. It was enough that the acts were done by the defendant with a full knowledge of the circumstances, although done primarily with a view to his own emolument.

Where the acts of a party necessarily tend to injure another, the law imputes a design to effect that object.

Acts which are innocent and lawful in themselves, may become wrongful and fraudulent, when done without a just regard to the rights of others.

VAN PELT sued Southworth and McGraw in the court of common pleas of Tompkins county, and declared in case for wrongfully and fraudulently removing rails, timber, &c. from certain lands on which the plaintiff held a mortgage, thereby injuring his security, &c. It was proved on the trial, that in May, 1840, Almeron Bailey and William E. Bailey being the owners of 119 acres of land in Dryden, Tompkins county, executed a bond and mortgage covering the same to Harvey A. Rice, to secure the payment of $500, one half payable in May, 1841, and one half in May, 1842. In August, 1842, Rice sold and assigned the bond and mortgage to the plaintiff, who instituted a foreclosure suit thereon, and obtained the usual decree for the sale of the premises in August, 1844. The amount then due on the mortgage including the costs of the foreclosure suit, was nearly nine hundred dollars. The mortgagors were insolvent, and the premises were an inadequate security for this sum. On the sale under the decree, which took place in October, 1844,

the premises produced only the sum of $575. Shortly [111] before the sale and while the advertisement was running, the defendant McGraw, who had become the owner of the equity of redemption by conveyance from the mortgagors, avowing that he would "strip the land," proceeded to draw off rails, and cut down and draw off valuable timber, &c. The premises were thereby considerably lessened in value. These acts were done by McGraw, and by Southworth aiding and assisting him, with full knowledge of the plaintiff's mortgage, and of the insolvency of the mortgagors.

The defendants' counsel requested the court to charge the jury that McGraw having the fee of the land, and being in possession, had a right to take off the fences and timber, and that these acts being lawful could not be deemed to have been done wrongfully or fraudulently. The court charged that the acts were lawful if they did not prejudice the plaintiff's rights or impair his security, but if the defendants had impaired that security with a knowledge of the lien, then their acts were wrongful and fraudulent. The defendants' counsel also requested the court to charge, that inasmuch as the plaintiff had alledged in his declaration that the defendants did the acts fraudulently and with a design to injure the plaintiff, he was bound to prove those allegations by other evidence than the mere removal of the rails and timber for their own emolument. The court refused so to charge. To the charge as delivered and to the refusal to charge as requested, the defendants excepted. The jury found a verdict of $150 in favor of the plaintiff. The judgment entered thereon was affirmed in the supreme court on error brought. The defendants appealed to this court.

*S. B. Cushing*, for appellant.

*Walbridge* and *Ferris*, for respondents.

PRATT, J. There is no doubt but that an action on the case will lie for an injury of the character complained of in this case. It forms no objection to this action that the circumstances [112]

of the case are novel, and that no case precisely similar in all respects has previously arisen. The action is based upon very general principles, and is designed to afford relief in all cases where one man is injured by the wrongful act of another, where no other remedy is provided. This injury may result from some breach of positive law, or some violation of a right or duty growing out of the relations existing between the parties. (1 *Cow. Treat.* 3.)

The defendant McGraw, in this case, came into the possession of the land subject to the mortgage. The rights of the holder of the mortgage were therefore paramount to his rights, and any attempt on his part to impair the mortgage as a security, was a violation of the plaintiff's rights. But the case is not new in its circumstances. The case of *Gates* v. *Joice*, (11 *John.* 136,) was precisely like the case at bar in principle. That action was brought by the assignee of a judgment against a person for taking down and removing a building from the land upon which the judgment was a lien. The plaintiff's security was thereby impaired. The court in that case sustained the action. The decision in that case was referred to and approved in *Lane* v. *Hitchcock*, (14 *John.* 213,) and in *Gardner* v. *Heartt*, (3 *Denio*, 234.) Nor is there any thing in the case of *Peterson* v. *Clark*, (15 *John.* 205,) which conflicts with the principle of these cases. That was an action by a mortgagee in the usual form of an action for waste. The declaration alledged seisin in the plaintiff, upon which the defendant took issue. There was no allegation that the mortgagor was insolvent, or the judgment as a security impaired. The only issue to be passed upon, was that in relation to the seisin. It is quite clear that upon such an issue the mortgagee must fail. Now this action upon the assumption that the plaintiff's land has be but that his mortgage as a security has been imp: damages, therefore, would be limited to the amount the mortgage, however great the injury to the land might be. It could, therefore, be of no consequence whether the injury occurred before or after forfeiture of the mortgage. The action is clearly maintainable.

Van Pelt *v.* McGraw.

It only remains, therefore, to be considered whether there [113] was any error in the charge of the court. In order to come to a correct conclusion upon this point, it becomes necessary to examine the exceptions to the charge in connection with the undisputed testimony in the cause, and the propositions upon which the court were required to charge. It had been proved that the defendants knew of the mortgage, that the mortgagors were insolvent, and that the property had been advertised for sale by virtue of the mortgage. They were forbid to remove the fences and timber, for the reason that the security would thereby be impaired. It was also proved that the value of the mortgage had been impaired by such removal. Under this state of facts the defendants' counsel asked the court to charge the jury, that McGraw having the fee of the land, and being in possession, had a right to take off the fences and timber; that the acts being lawful, could not be deemed to have been done wrongfully or fraudulently. The court charged that the acts were lawful if they did not prejudice the plaintiff's rights or impair his security, but that if they had impaired the security, knowing the plaintiff's lien, they were liable. As an answer to the propositions of the defendants' counsel, the charge was correct. Acts may be harmless in themselves, so long as they injure no one, but the consequences of acts often give character to the acts themselves. It is upon this distinction that the maxim is based, *sic utere tuo est alienum non lœdas.* As I have before observed, the lien of the plaintiff upon the land was paramount to any interest which the defendants possessed therein, and any wilful injury of that lien by them was a violation of the plaintiff's rights, for which an action would lie.

The defendants' counsel also asked the court to charge that the plaintiff having alledged in his declaration that the defendants did the acts fraudulently and with a design to injure the plaintiff, he was bound to prove the allegations by evidence other than the mere act of removing the timber for the emolument of the defendants. The court refused so to charge, to which there was an exception. This proposition is somewhat obscure, but I understand it to mean that the plaintiff should prove that

[114] the primary motive of the defendants was to cheat the plaintiff. If the defendants knew that by taking off the timber the value of the plaintiff's mortgage as a security would be impaired, they would be legally chargeable with a design to effect that object, although their leading motive may have been their own gain. A man must be deemed to design the necessary consequences of his acts. If, therefore, he does a wrongful act, knowing that his neighbor will be thereby injured, he is liable. It is upon this principle that persons are often chargeable with the intent to defraud creditors, or to commit any other fraud. The immediate motive is oftentimes self-interest, but if the necessary consequence is a fraud upon his neighbor, the actor is legally chargeable with a design to effect that result. Upon the whole, therefore, although the charge is not quite so explicit as it should be, yet taken in connection with the propositions presented to the court, I think it was substantially correct. The judgment of the supreme court should be affirmed.

Judgment affirmed.