HENRY SHEAFER, Respondent, v. JOSEPH BREEN, INC., and JOSEPH BREEN, Appellants.

First Department, December 12, 1941.

*Francis V. Goggins* of counsel [*Richard J. Roche*, attorney for Joseph Breen, Inc.; *Francis V. Goggins*, attorney for Joseph Breen], for the appellants.

*Russel W. Leary*, for the respondent.

CALLAHAN, J. The present appeal involves the question of the legal sufficiency of the complaint. The action is one brought by a mortgagee against two defendants, neither of whom was a party to the mortgage contract.

The corporate defendant was a firm which had contracted with the owner of the mortgaged land to excavate a large quantity of earth therefrom. The individual defendant was an officer of the corporate defendant.

The action is one in the nature of a suit in trespass to recover for waste of plaintiff's mortgage security.

Plaintiff contends that his pleading sets forth a cause of action based on common-law principles as well as one based on rights granted to him by statute. Defendants contend that the complaint fails to set forth facts sufficient either at common law or under the statute relied on. Defendants further contend that to construe the statute on which plaintiff relies so as to make it the basis of a right to recover damages would place it in conflict with the provisions of our State as well as the Federal Constitution.

Summarizing the complaint we find that it alleges the execution and recording of plaintiff's mortgage; that the defendants excavated the plot of ground covered by the mortgage; that the excavation was made for other than construction purposes. While not so alleged in the complaint, the parties have stipulated that the defendants entered upon the mortgaged premises with the permission of the owner of the equity of redemption. The complaint then proceeds to set forth the existence of certain provisions of the Administrative Code of the City of New York contained in section C26–388.0 thereof. Subdivisions " a " to " d " of the said section are set forth verbatim in the complaint. It appears therefrom that the statute is entitled " Excavations other than for construction purposes."

Subdivision " a " thereof provides in substance that an excavation made for the purpose of taking earth or other material shall be made in such a manner as to prevent injury to neighboring properties and to the street adjoining the excavation.

Subdivision " b " requires that the excavation shall not be commenced until a permit has been obtained.

Subdivision " c " requires that applications for permits shall follow a prescribed form and be accompanied by a plot plan of the area to be excavated.

Subdivision " d " requires that permits for the excavation shall be issued only upon proof that the land is free from any unpaid taxes. It provides further that if there is an unpaid mortgage upon the property the consent of the mortgagee must be submitted upon applying for the permit.

In addition to the foregoing subdivisions quoted by plaintiff, we find many other provisions in the section relating to such matters as the depth of excavations, the manner of protecting the sides thereof, drainage, and the refill of dangerous excavations.

The local law relied on provides that one guilty of a violation thereof shall be punished by fine or imprisonment or both.

Plaintiff's complaint describes the extent to which the present excavation was made, and alleges that no permit was applied for or issued in connection with the work. It states that there was in excess of $5,000 in unpaid taxes on the land excavated; that the mortgagee had not consented to the excavation and that it was made without his knowledge. It asserts that by reason of the acts complained of the value of the property was reduced to a sum less than the amount of the unpaid taxes, and that plaintiff's mortgage has been rendered worthless.

Disposing of plaintiff's claim that the complaint alleges a cause of action under common-law principles, we find the pleading insufficient in this respect because it fails to allege that the defendants acted with knowledge of plaintiff's mortgage and with intent to impair the security thereof. (*Van Pelt* v. *McGraw*, 4 N. Y. 110; *Wilson* v. *Maltby*, 59 id. 126; *Hovey* v. *Elliott*, 118 id. 124, 139.)

Reverting to the statute relied on we find that the Administrative Code of the City of New York was approved by the State Legislature (Laws of 1937, chap. 929), but at the time of such approval section C26–388.0 contained only the paragraph now designated " a," which, as we have pointed out above, merely requires one excavating land to provide for lateral support.

The additional provisions now found in the section were added by a local law of the city of New York known as Local Law No. 164 for the year 1939, which amended section C26–388.0 of the Administrative Code by adding these new provisions.

Defendants contend that even if they violated the provisions of this section in failing to obtain a permit or the consent of the mortgagee, such violation did not afford plaintiff a remedy by civil action. They contend that the penalty found in the section must be deemed to be exclusive, as the section was no more than a municipal ordinance creating a public offense. They further contend that if any greater force is to be given to it the law would be in excess of the powers possessed by the local legislature of the city of New York.

The primary question on this appeal is whether the law is to be construed as granting plaintiff a remedy by civil action against persons making excavations without permit or plaintiff's consent. In answering this question we do not deem it necessary to determine the power of the local legislature to create a new civil remedy or

whether, if the section involved created such a remedy, it is constitutional.

Though there appears to have been considerable conflict in the earlier cases on the subject, we deem that it is now well settled, at least as to a State statute which discloses an intention, express or implied, to legislate for the benefit of an individual or group of persons, that a disregard of the statute creates a civil liability *per se* in favor of the person so intended to be benefited. (*Racine* v. *Morris*, 201 N. Y. 240; *Martin* v. *Herzog*, 228 id. 164; *Schmidt* v. *Merchants Despatch Transportation Co.*, 270 id. 287.)

The cases are not so clear as to the rule to be applied as to municipal ordinances containing a like provision. It has been held, with regard to claims for personal injuries, that violation of a city ordinance is merely some evidence of negligence and does not afford the right of recovery *per se*. (*Martin* v. *Herzog, supra; Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345.) Writers on the subject are not in favor of the distinction made in the decisions between a statute and an ordinance. (Harper on The Law of Torts, § 78; Thayer on Public Wrong and Private Action, 27 Harv. L. Rev. 317.)

It has been held in this State for many years that violation of a municipal ordinance requiring an adjoining owner to clear or repair a sidewalk in front of his premises does not afford a basis for recovery against such adjoining landowner, the courts saying that an ordinance is to be confined exclusively to its penal application. (*City of Rochester* v. *Campbell*, 123 N. Y. 405.)

Where, as here, there is no express grant of the right of civil action, the question of implied right is one of statutory construction. (*Amberg* v. *Kinley*, 214 N. Y. 531.)

If the purpose and intent of a statute or ordinance is to legislate exclusively for the benefit of the general public and not for the protection of any class or classes of individuals, no private wrong is committed by its breach and no civil action will lie for damages. (Harper on The Law of Torts, § 78, p. 189.) Of course, the fact that the statute is a penal law is not determinative. As was said by Professor Harper (p. 189): "* * * Most statutory duties carry an express penal sanction and many are silent as to civil liability for a breach thereof. The courts, in supplying the latter, sometimes purport to find it the unexpressed intent of the Legislature, but more frequently merely determine the general policy of the Legislature with respect to the general type of harm sought to be avoided by the statute and the general class of persons to be protected. If these two factors can be determined with reasonable precision, the statutory duty is found to require civil liability for its breach."

A reading of Local Law No. 164 indicates that it was intended to amend the Administrative Code in relation to the abatement of sand pits and their operation in restricted areas. It is provided that the excavation shall be made in such a manner as to prevent injury to neighboring properties, to the street which adjoins the excavation, and to the public health and comfort, and to that end a permit is required. In order to obtain a permit the consent of the mortgagee of an unpaid mortgage on the property is required. There is no express grant of a civil remedy to a mortgagee, and we are of opinion that none is implied. Any other construction of the statute would impose on citizens of New York a liability under the substantive law not recognized throughout the State generally. The statute, being in derogation of the common law, should be strictly construed and held not to afford a right of civil action to a mortgagee for every violation of its provisions. If such a right were to be implied in favor of a mortgagee, whose consent to the excavation was not obtained, against a third party, it might with equal force be implied in favor of a municipality whose lien for taxes is unpaid.

In *Huntington* v. *Attrill* (146 U. S. 657) Mr. Justice GRAY said (at p. 668): " The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual, according to the familiar classification of Blackstone: ' Wrongs are divisible into two sorts or species: *private wrongs* and *public wrongs*. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals; and are thereupon frequently termed *civil injuries;* the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community; and are distinguished by the harsher appellation of *crimes* and *misdemeanors.*' 3 Bl. Com. 2."

We are of opinion that the law is intended to regulate excavations as a matter concerning the public welfare, and should be confined to its penal application as one affecting the public good.

Having thus determined that the local law is intended merely as a regulation of the conduct of those who are carrying on excavations of real property in the city of New York, we find little difficulty in upholding the right to pass such a statute within the power conferred on the local legislature by the Constitution and statutes of the State. So construed the local law amends a section of the Administrative Code concerning the property, government and affairs of the city (State Const. art. IX, § 12) and is for the order, protection and government of persons and property in the city.

(New York City Charter, § 27.) It conforms to the usual purpose of municipal ordinances, *i. e.*, the regulation of municipal affairs in the interest of the public. (See *Orr* v. *Baltimore & Ohio Railroad Co.*, 168 App. Div. 548.)

Nor is there difficulty in upholding the right of the local legislature within the police power to regulate such excavations in the city of New York without depriving an owner of such property of his rights without due process of law. The many situations which Local Law No. 164, on its face, indicates an intention to remedy, clearly show that regulations of such excavations in the city were matters within the police power. While it is true that the statute, if carried to an extreme, might prevent an owner of the equity of redemption from making even the smallest excavation on his land without a permit, we do not think that this narrow construction would be warranted. It is enough that a reasonable basis for a regulatory statute exists. There is no interference with excavation, except in so far as a permit is required. The requirement that those who intend to excavate land which is subject to the lien of a mortgage or to unpaid liens in favor of the city, obtain consents of such lienors, is not an unreasonable restraint on, or interference with, the property rights of the owner of the equity, in view of the superior nature of the liens thus protected. (See *Prentice* v. *Weston*, 111 N. Y. 460.)

The complaint is, therefore, insufficient.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion granted, with leave to plaintiff to serve an amended complaint within ten days after service of order on payment of said costs.

Martin, P. J., Glennon, Untermyer and Dore, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and the motion granted, with leave to plaintiff to serve an amended complaint within ten days after service of a copy of order with notice of entry thereof, on payment of said costs.